The first matter on for argument today is U.S. v. Youval Geringer-Ganor. Good morning, Counsel. Good morning, Your Honor. Verna Weeple on behalf of Youval Geringer, who is the appellant. Can you hear me okay? Yes. Okay. I guess the big question is what sets this particular outrageous conduct case apart from all the other arguments that are frequently made but have been unsuccessful? And I think the biggest thing is the government's claim that they were investigating a criminal enterprise that was already in existence, this Sinaloa cartel, Operation Rush Hour, the individual named Jaime Washington Cruces, who then- Well, isn't that true, that there was at that time an existing criminal organization? We have no idea. The only evidence that this organization was in existence is the testimony of Agent Rojas. And the problem is, first of all, the district court judge does not make any findings of fact. But if we look at all of the sentencing documents that were filed in Mr. Cohen's case, and it was the government's argument that this Jaime Washington Cruces referred them to Mr. Cohen in Amsterdam. But if we look at all of the documents that were filed in Mr. Cohen's sentencing case, there's not one mention of Operation Rush Hour, Jaime Washington Cruces, the Mexican drug cartel, Sinaloa drugs. And the allegation that Mr. Cohen was involved in money laundering was all regarding Europe. And it turns out that Mr. Cohen was a serious alcoholic with money problems. There's absolutely nothing to link it up to the government's original contention. And the reason why we can't accept the government's-I mean, there's a serious contradiction here. I mean, if we send it back, you know, under the Bogart case for findings of fact, I mean, it may well be that the government is going to be able to prove its allegation. But right now, we can't say that. And I think it's important- So let me ask you, what specific facts do you think that the judge should have found that did not find? I think that the court should have specifically found whether or not this allegation by the government, that they were involved in Operation Rush Hour 1 and 2, that they were investigating the Mexican or Sinaloa drug cartel, that led them to this guy, Jaime Washington Cruces, who then in turn turned them on to this money launderer in Europe. Because right now, that is a critical allegation or part of the government's justification for this whole scheme. And it appears under the sentencing documents filed in Mr. Cohen's case not to be accurate. Is there anything in the record that would support such a finding? Well, do you mean a finding that it's not true or that it is true? That it is true. That the government's argument is true? Yes. The only thing that's in the record is Mr. Rojas' testimony, Agent Rojas' testimony. Is that not enough? No, it's not, and I'll tell you why. Because in this case, we also have the fact that Mr. Garinger was arrested at that warehouse in San Dimas with 5 kilos of coke. And the other agents that were involved and the local officers testify that they deliberately sent Mr. Garinger there to pick up the dope so they could arrest him. There is a dispute as to whether or not Mr. Garinger would have ever involved himself in drug dealing. He did admit that he was moving paper around, but not drugs. And there is the problem about the text message on that BlackBerry. Mr. Estrada, I believe it was, a Pomona police officer testified before the grand jury and at Mr. Mastry's trial that Mr. Garinger is the one who sent the text message. And it turned out that that was not true. And then when Mr. Garinger was going to go to trial and his lawyer wanted to test the BlackBerry, which had been in government custody, the text message mysteriously disappeared. Now the government conceded that the testimony in the earlier proceedings had been in error and they admitted that Mr. Garinger is not the one who sent the text message. But, you know, it's all very suspicious. But on that, the district court made a specific finding that there was no bad faith, correct? I think what the district court found was that the evidence was basically an acropoise. The defense could not prove bad faith, let's put it that way. But the defense expert was not able to say conclusively that it had been deliberately deleted and the government expert was not able to say that it was absolutely a mistake or that it just disappeared. And so as long as the government was willing to concede and testify at Mr. Garinger's own trial, that in fact the text message had been sent by Matsry, there really wasn't a problem. I think the biggest thing we come back to is after Mr. Garinger is convicted, all the stuff regarding Mr. Cohen appears to contradict their initial argument that they just happened upon this by investigating something else, and that's critical to an outrageous conduct argument. And that's why under Bogart, this court can't resolve these contradictions. It should be sent back for the district court to make an evidentiary hearing and for the district court to make findings of fact. I think that's very critical. The other thing that the government pointed out in their argument was that the district court judge had presided over Mr. Matsry's trial, and so it was aware of the facts. But Mr. Matsry's trial was not about Garinger's outrageous conduct motion. And the same evidence regarding this Operation Rush Hour was the same testimony that they gave at that trial. Nothing came out about the truth, or let me put it this way, about what would ultimately become the allegations regarding Mr. Cohen. And that, I think, is critical. You're down to just a little over two minutes. Would you like to save the remaining time? I would love to. Thank you so much. Good morning, Your Honors. May it please the Court. With respect to the question of the Court's factual findings, it's true that in its specific decision regarding the outrageous conduct motion, the Court referred to its familiarity with the facts of the case. But the Court made other findings during the course of this case that all bear on the decision to reject defendants' outrageous conduct motion, which ultimately had absolutely no basis in fact. And most importantly right now, as Your Honors already noted, the Court rejected defendants' claim that there were any issues regarding the text message that bore on misconduct. The Court made a very clear finding. There was no evidence of bad faith. And with respect to the fantastical allegation that the origins of the case were fabricated, not only was there Agent Rojas' testimony, but at both trials and in a discovery motion and in response to the misconduct motion, the government offered text message exchanges between the undercover and Yaron Cohen and Moshe Matsuri, all of which were consistent with the narrative that had been presented, as well as recorded conversations between these people. And all of that was consistent with the government's characterization of the origins of the investigation. And in response to defendants' discovery motion, the Court actually made a finding that it was perfectly credible that while investigating drug dealers, undercover agents would come across an organization of money launderers and that a money launderer based in Amsterdam might know other money launderers. There was never any contrary evidence presented by the defense, no testimony to the contrary. Defendant Gerringer never challenged any of the things that are now coming up on appeal. So that would be somewhat similar to the Bogart decision, saying that if it's undisputed, if it's not disputed, we don't have to remand for findings, right? Exactly, Your Honor. Let me ask you a question, though. Yes, sir. Forget about whether or not the judge made findings, okay? If, in fact, the judge's decision is supported by the record, okay, should we not affirm if there's any grounds for affirming by looking at the record? Absolutely, you should. The record, this Court can affirm on the grounds of anything in the record. There is a very fulsome record in this particular case, and review in motions to dismiss is, in fact, de novo. So this Court does have plenty of basis to affirm the Court's decision to reject the motion, including evidence from the trials and the motions, all of which supports the fact that the story that the government presented is supported by evidence. I suppose another question is, even if this were actually a deliberate operation to target Moshe Matsuri, given that Moshe Matsuri was, in fact, a criminal, it's not clear why that would be misconduct. There has never been any dispute that Defendant Gerringer was brought into this case by Moshe Matsuri and not personally targeted by the government, nor has there ever been any dispute that he voluntarily continued to meet with the undercovers and engaged in an assortment of money laundering deals. The defense counsel right now also raises the specter of entrapment, but clearly that was rejected by the jury at the trial, and with respect to the Court and the findings in the record before this Court, this Court has not only the trial testimony but also the actual text message where Defendant Gerringer first brought up the topic of a 100-kilogram cocaine deal, which was the basis for his conspiracy charge, as well as the transcript from the recorded meeting on May 2nd between Defendants Matsuri and Gerringer and the undercovers, where Gerringer again says that he wanted to buy 100 kilograms of cocaine on credit. That evidence is not in dispute and could not be clearer to indicate that there was no misconduct here. This was a legitimate investigation into an existing operation, and the undercovers merely presented the defendants with opportunities to commit crimes that they were already engaged in. So if there are no further questions? Let me see if Judge Gould has any questions for the government before you sit down, Counsel. Judge Gould? Yes, thank you. I have no questions here. Thank you very much. Thank you very much. I think the other question that comes to mind is, why would the government misrepresent Operation Rush Hour and Jaime Washington Cruz's when in the Cohen sentencing documents they don't make any mention of it, you know? And so the issue is under the black factors, the sixth factor, which is the government's necessity for beginning to investigate. I think that that's critical, and there should be findings of fact, because the record now is contradictory. And this is clearly an enterprise or a scheme that was engineered by the government from start to finish. And there is nothing illegal about Hawala transfers. It goes on all over the Middle East, unless you know, of course, in terms of money laundering that the money is coming from illegal proceeds. But this failure to resolve this fact is critical in this particular case. Thank you. All right. Thank you very much, counsel. The matter is submitted for decision.
judges: Gould, Nguyen, Benitez